IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA and
STATE OF NEW MEXICO *ex rel*.
JACOB KURIYAN,

        Plaintiffs,

vs.                                            No. CIV 16-1148 JB/KK

MOLINA HEALTHCARE OF NEW MEXICO,
INC.; PRESBYTERIAN HEALTH PLAN,
INC.; UNITEDHEALTHCARE OF NEW
MEXICO, INC., and HCSC INSURANCE
SERVICES CO. *dba* BLUE CROSS & BLUE
SHIELD OF NEW MEXICO,

        Defendants.

## **MEMORANDUM OPINION**[1]

**THIS MATTER** comes before the Court on Plaintiff/Relator Jacob Kuriyan's Motion to

Alter or Amend the Judgment, and for Relief from a Judgment and Order, filed September 10,

2024 (Doc. 457)("Motion to Amend").  The Court holds a hearing on October 25, 2024.  See

Clerk's Minutes at 1, filed October 25, 2024 (Doc. 470).  The primary issues are: (i) whether the

Court should amend its Final Judgment, filed August 30, 2024 (Doc. 456), to allow Kuriyan's

Counts I, II, and III, to proceed, because, according to Kuriyan, the Court has not properly

dismissed those Counts; and (ii) whether the Court should amend its Final Judgment to allow

Kuriyan's Count IV to proceed, because, according to Kuriyan, the Court does not interpret the

New Mexico Fraud Against Taxpayers Act ("NMFATA") correctly.  The Court concludes that: (i)

---

[1] On September 29, 2025, the Court enters an Order denying Plaintiff/Relator Jacob Kuriyan's Motion to Alter or Amend the Judgment, and for Relief from a Judgment and Order, filed September 10, 2024 (Doc. 457).  See Order at 1-2, filed September 29, 2025 (Doc. 469).  In the Order, the Court states that it will "issue a Memorandum Opinion at a later date more fully detailing its rationale for this decision."  Order at 1 n.1.  This Memorandum Opinion is the promised opinion.

rules 59 and 60 of the Federal Rules of Civil Procedure do not permit amendment of the final Judgment as to Kuriyan's Counts I, II, and III, because Kuriyan's attorney states that Kuriyan is not pursuing those Counts; and (ii) rules 59 and 60 of the Federal Rules of Civil Procedure do not permit amendment of the Final Judgment as to Kuriyan's Count IV, because the Court commits no error in its interpretation of the NMFATA.

**PROCEDURAL BACKGROUND**

For several years, Kuriyan brought claims against the Defendants as a pro se party. See Complaint at 1, filed October 18, 2016 (Doc. 1). As a result, the case is assigned to Magistrate Judge Kirtan Khalsa. It is not until 2019 that Kuriyan retains his first attorney, Bryan Davis. See Entry of Appearance at 1, filed January 14, 2019 (Doc. 19). Soon thereafter, Mr. Joel Androphy substitutes as Kuriyan's new counsel. See Motion to Substitute Counsel at 1, filed February 20, 2019 (Doc. 20).

On March 12, 2021, Magistrate Judge Khalsa enters the Agreed Order Staying Discovery (Doc. 194). In the Agreed Order Staying Discovery, Magistrate Judge Khalsa stays discovery with respect to the MCO Defendants pending the resolution of Kuriyan's motion for an award from an alternate remedy dispute. See Agreed Order Staying Discovery at 1.

On July 7, 2022, the United States files the United States', the State of New Mexico's, and New Mexico Human Services Department's Motion to Dismiss Relator's Qui Tam Action under the Public Disclosure Bar (Doc. 303)("Public Disclosure MTD"). In the Public Disclosure MTD, the United States seeks dismissal, because Kuriyan "is not an original source of the allegations in his complaints." Public Disclosure MTD at 2. Further, the United States argues that dismissal is appropriate, because Kuriyan does not have knowledge or information about the Defendants' scienter. See Public Disclosure MTD at 2. That same day, the United States files the United States and the State of New Mexico's Motion for Summary Judgment on Relator's Demand for an

Alternate Remedy and Memorandum in Support, filed July 7, 2022 (Doc. 305)("Alternate Remedy MSJ").  In the Alternate Remedy MSJ, the United States argues that to have a successful alternate remedy theory, Kuriyan is required to prove that the New Mexico Human Services Department recouped money from Defendants for or to prevent the same type of fraud or falsity that the FCA and the NMFATA recognize and that the New Mexico Human Services Department used Kuriyan's information to recoup the funds at issue from the Defendants.  See Alternate Remedy MSJ at 1-2.  It is the United States' position that there is no evidence supporting either part of this test.  See Alternate Remedy MSJ at 2.

On August 28, 2023, Magistrate Judge Khalsa files the Proposed Findings and Recommended Disposition (Doc. 409)("PFRD").  In the PFRD, Magistrate Judge Khalsa concludes that, as a matter of law, the False Claims Act's, New Mexico Medicaid False Claims Act's, and New Mexico Fraud Against the Taxpayers Act's public disclosure bars apply to Kuriyan's claims, and that Kuriyan has not presented evidence from which a reasonable jury could conclude that he was an original source.  See PFRD at 15.  Magistrate Judge Khalsa also concludes that Kuriyan has no right to recover a portion of any alternate remedy because the public disclosure bars in the FCA, NMMFCA, and NMFATA bar his claims.  See PFRD at 31.  In the alternative, Magistrate Judge Khalsa recommends that the Court grant the United States' Alternate Remedy MSJ:

> In sum, Relator has failed to present sufficient evidence to allow a reasonable juror to find that HSD's reconciliation and recoupment processes had been completed by the time he presented his MLR analysis, that his MLR analysis had an impact on HSD's or Mercer's calculations or processes, or that HSD or Mercer recouped monies based on his MLR analysis but hid that fact by attributing the recoupments to the risk corridor or other calculations. He has therefore failed to rebut the Government's evidence to the contrary or show a triable issue of fact. See Tesone, 942 F.3d at 994 (nonmovant who would bear burden of persuasion at trial must adduce evidence creating question of fact to overcome movant's evidence negating an essential element of nonmovant's claim). I therefore recommend that, if it finds the Government's Alternate Remedy Motion is not moot, the Court grant

the Motion on its merits and enter summary judgment in the Government's favor on Relator's alternate remedy claims.

PFRD at 37.

On September 9, 2023, Kuriyan retains Alan Grayson. See Notice of Appearance at 1, filed September 9, 2023 (Doc. 411). On December 20, 2023, Kuriyan, with new counsel, files Plaintiff-Relator's Motion for Summary Judgment on 2014 New Mexico Medicaid Overpayments (Doc. 423)("Kuriyan MSJ"). Here, Kuriyan seeks summary judgment against the Defendants under the FCA. See Kuriyan MSJ at 2. Kuriyan's argument in favor of his motion for summary judgment is that the Defendants had a legal obligation to return overpaid funds but failed to do so within the time allowed by the 60-Day Rule. See Kuriyan MSJ at 2.

On August 30, 2024, the Court files its Memorandum Opinion and Order Adopting the Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 455)("MOO"). Relevant here, the Court dismisses Counts I, II, and III, without prejudice:

> The Court notes, however, that, although it does not dismiss Kuriyan's FCA and NMMFCA claims on the basis of the Public Disclosure Motion, Kuriyan has represented that he does not intend to proceed to trial with these claims independent of his alternative remedy claims. See, e.g., Plaintiff/Relator Jacob Kuriyan's Response to Defendants' Motion to Dismiss Relator's 3rd Amended Complaint [ECF 144] at 1, filed November 19, 2020 (Doc. 145)("As a preliminary matter, Relator does not intend to seek further damages against Defendants once his alternate remedy dispute with the United States and State of New Mexico (collectively, 'the Government') has been resolved."). That is, at this point, Kuriyan seeks only to share in the monies from the reconciliation process on the basis that this process represents an alternative remedy to his fraud claims. Because the Court grants the Defendants' Alternative Remedy Motion, this litigation has concluded, because Kuriyan has represented that the alternative remedy claim represents his sole pursuit. It therefore is appropriate for the Court to enter Final Judgment, so that Kuriyan can pursue an appeal of the Court's ruling on the alternative remedy issues.

MOO at 64. Further, the Court dismisses Count IV with prejudice under the NMFATA's public disclosure bar. See MOO at 63-64.

- 4 -

On September 10, 2024, Kuriyan, now with new counsel, files Relator's Motion to Alter or Amend the Judgment, and for Relief from a Judgement and Order (Doc. 457)("Motion to Amend"). In the Motion to Amend, Kuriyan asks the Court to Amend its Final Judgment which dismisses Counts I, II, III, and IV. See Motion to Amend at 3. First, Kuriyan argues that the Court should amend the Final Judgment that dismisses Counts I, II, and III, because, "whatever [Kuriyan's] counsel may have speculated, four years ago, about the course of future litigation, neither [Kuriyan] nor [Kuriyan's] counsel is in a proper position to 'waive' a valid claim against Defendants on behalf of the taxpayers . . . ." Motion to Amend at 7. Second, Kuriyan argues that the Court should amend the Final Judgment that dismisses Counts I, II, and III, because Kuriyan told his then lead-counsel not to tell the Court that Kuriyan does not want to pursue Counts I, II, and III. See Motion to Amend at 8. Third, Kuriyan argues that the Court's dismissal of these Counts is improper, because "counsel could not have anticipated four years ago that document production would yield, in a single document, demonstrable evidence of the Defendants' FCA and NMMFCA liability under Medicaid's 60-Day Rule." Motion to Amend at 9. Finally, Kuriyan argues that the Court should amend the Final Judgment that dismisses Count IV, because the Court does not exercise properly NMFATA's discretion when deciding to dismiss Count IV in the MOO. See Motion to Amend at 13.

On September 24, 2024, the United States files the Response to Relator's Motion to Alter or Amend (Doc. 459)("U.S. Response"). In the U.S. Response, the United States contends that the Court should deny the Motion to Amend, because Kuriyan seeks to proceed with claims he does not allege in his Third Amended Complaint. See U.S. Response at 1. According to the United States,

> allowing [Kuriyan] to proceed on such claims for reconciliations unrelated to the Medical Loss Ratio would necessarily conflict with the Court's holdings that the Government's normal-course contractual reconciliation process is not an alternate

remedy to [Kuriyan's] claims of Medical Loss Ratio overpayments because, among other reasons, [Kuriyan] did not allege claims for overpayments based on the reconciliation calculation in his *qui tam* complaint.

U.S. Response at 2.

On September 28, 2024, Kuriyan files the Relator's Reply to the Government's Response to Motion to Alter or Amend the Judgment, and for Relief from a Judgment and Order (Doc. 461)("1st Reply").  Kuriyan states that, "aside from Footnote One, the remainder of the Government's so-called "response" is impenetrable nonsense that has no discernible relationship" to the issues which the Motion to Amend raises.  1st Reply at 3.  Kuriyan again argues that it is improper for the Court to dismiss Counts I, II, and III, because Kuriyan's former counsel makes an unauthorized statement regarding how former counsel "prognosticated the case going forward." 1st Reply at 2.  Kuriyan also contends that it is disappointing that the United States does not address the Court's dismissal of Count IV in the U.S. Response.  See 1st Reply at 4 ("What is particularly unfortunate about the Government's mumbling of obscurantist talking points is that it misses an opportunity to address a very important issue presented by [Kuriyan's] Motion, *i.e.* whether or not dismissal of [Kuriyan's] fourth claim comports with 'the best interest of the parties involved and the public purposes behind the Fraud Against Taxpayers Act.").

On October 8, 2024, the Defendants UnitedHealthcare of New Mexico, Inc., HCSC Insurance Services Co., Molina Healthcare of New Mexico, Inc., and Presbyterian Health Plan, Inc., (collectively "the MCO Defendants") file Defendants' Joint Opposition to Relator Kuriyan's Motion to Alter or Amend the Judgment (Doc. 462)("Defendants' Response").  First, the MCO Defendants argue that:

the Court already precluded liability against the MCOs when it held -- in a portion of the opinion that Kuriyan does not ask the Court to reconsider -- that Kuriyan could not establish that the $221 million in recoupments stemmed from false certifications or improperly retained payments (as would be required for FCA, NMMFCA, and NMFATA liability) and that those recoupments instead were part

of the ordinary-course contractual reconciliation process. The Court's conclusion on that score necessarily precludes Kuriyan's further prosecution of his fraud claims based on the recoupments.

Defendants' Response at 2. Second, the MCO Defendants argue that the Court should not amend the Final Judgment as to Counts I, II, and III, because "the Court properly considered as part of its analysis Kuriyan's many representations in written filings and in open court that he would not pursue any recovery against the MCOs." Defendants' Response at 3. Third, the MCO Defendants contend that the Court should not amend its dismissal of Count IV, because a rule 59 or 60 amendment is not available when Kuriyan is repeating the same argument the Court already rejects. See Defendants' Response at 4.

On October 22, 2024, Kuriyan files the Relator's Reply in Support of Motion to Alter or Amend the Judgment (Doc. 469)("2nd Reply"). In the 2nd Reply, Kuriyan concedes that his former attorney inaccurately represents to the Court that Kuriyan does not intend to seek further damages against MCO Defendants once the Court resolves his alternate remedy dispute with the United States and the State of New Mexico. See 2nd Reply at 4. Kuriyan argues, however, that the MCO Defendants take that statement out of context. See 2nd Reply at 5. Further, Kuriyan contends that the MCO Defendant's argument that the Court already precludes liability against the MCOs in the MOO is unsound, because that would be the equivalent of granting a motion for summary judgment that the Defendants do not file. See 2nd Reply at 5. Kuriyan also notes that the Defendants do not respond to his argument that, under the FCA, the Court is the steward of the taxpayer's interest. See 2nd Reply at 10. Finally, Kuriyan argues that the Defendants "have nothing to say about [Kuriyan's] argument that there was no 'waiver' here because there was no 'intentional relinquishment or abandonment of a known right.'" 2nd Reply at 11 (quoting United States v. Olivas-Perea, 297 F. Supp. 3d 1191, 1209 (D.N.M. Oct. 31, 2017)(Browning, J).

## LAW REGARDING MOTIONS FOR RECONSIDERATION

Courts may treat motions for reconsideration as a rule 59(e) motion when the movant files within twenty-eight days of a court's entry of judgment.  See Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005).  If the movant files outside that time period, courts should treat the motion as seeking relief from judgment under rule 60(b).  See Price v. Philpot, 420 F.3d at 1167 n.9.  "[A] motion for reconsideration of the district court's judgment, filed within [rule 59's filing deadline], postpones the notice of appeal's effect until the motion is resolved."  Jones v. United States, 355 F. App'x 117, 121 (10th Cir. 2009).[2]  Rule 59(e)'s time limit is now twenty-eight days from the entry of a judgment.  See Fed. R. Civ. P. 59(e).

Whether a motion for reconsideration is a motion under rule 59 or under rule 60 is not only a question of timing, but also "depends on the reasons expressed by the movant." Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1200 (10th Cir. 2011).  Where the motion "involves 'reconsideration of matters properly encompassed in a decision on the merits,'" a court considers the motion under rule 59(e).  Phelps v. Hamilton, 122 F.3d 1309, 1323-24 (10th Cir. 1997)("Phelps")(quoting Martinez v. Sullivan, 874 F.2d 751, 753 (10th Cir.

---

[2]Jones v. United States, is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appels for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Jones v. United States, United States v. Austin, and Xiong v. McCormick have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

1989)).  In other words, if the reconsideration motion seeks to alter the district court's substantive ruling, then it is a rule 59 motion and is subject to rule 59's constraints.  See Phelps, 122 F.3d at 1324.  A court should grant a rule 59 motion if there is (i) an intervening change in the controlling law; (ii) new evidence previously unavailable; or (iii) the need to correct clear error or prevent manifest injustice.  See Servants of the Paraclete v. Does, 204 F.3d 1005, 102 (10th Cir. 2000).

In contrast, rule 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representatives from a final judgment, order, or proceeding for the following reasons:

(1)     mistake, inadvertence, surprise, or excusable neglect;

(2)     newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)     fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)     the judgment is void;

(5)     the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)     any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 59 and rule 60 motions for reconsideration are "inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of the Paraclete v. Does, 204 F.3d at 1012.  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of the Paraclete v. Does, 204 F.3d at 1012.

"[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of the Paraclete v. Does, 204 F.3d at 1012. A district court has considerable discretion in ruling on a motion to reconsider. See Phelps, 122 F.3d at 1324.

## LAW REGARDING THE FALSE CLAIMS ACT, NEW MEIXICO MEDICAID FALSE CLAIMS ACT, AND NEW MEXICO FRAUD AGAINST TAXPAYERS ACT CLAIMS

The False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"), "allows for the recovery of civil penalties and treble damages from anyone who defrauds the [federal] government by submitting fraudulent claims for payment." United States ex rel. Reed v. KeyPoint Gov't Sols., 923 F.3d 729, 735-36 (10th Cir. 2019)("Reed"). See 31 U.S.C. § 3729(a)(i)(A). "Liability also attaches to anyone who 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'" Reed, 923 F.3d at 736 (quoting § 3729(a)(1)(B)). In addition, the FCA imposes liability for attempts to reduce an obligation owed to the United States. U.S. ex rel. Bahrani v. Conagra, Inc., 465 F.3d 1189, 1194-95 (10th Cir. 2006)("Bahrani"); 31 U.S.C. § 3729(a)(1)(G). Thus, "an individual who makes a material misrepresentation to avoid paying money owed the Government would be equally liable under the Act as if he had submitted a false claim to receive money.'" Bahrani, 465 F.3d at 1194-95 (10th Cir. 2006)(quoting S.Rep. No. 99-345, at 18, 1986 U.S.C.C.A.N. at 5283). "To enforce its provisions, the Act empowers individuals to file suits on behalf of the government alleging that a third party made a fraudulent claim for payment to the government." Reed, 923 F.3d at 736. See 31 U.S.C. § 3730(b)(1). "These suits are known as '*qui tam*' suits, and the individual plaintiffs are called 'relators.'" Reed, 923 F.3d at 736.

Like the FCA with respect to the federal government, the New Mexico Medicaid False Claims Act, N.M.S.A. §§ 27-14-1 to -15 ("NMMFCA"), and New Mexico Fraud Against

Taxpayers Act, N.M.S.A. §§ 44-9-1 to -14 ("NMFATA"), permit a relator to bring an action on the State of New Mexico's behalf for false or fraudulent claims.  See N.M.S.A. § 27-14-7(B); id. § 44-9-5.  In relevant part, the NMMFCA imposes liability on one who:  (i) "presents, or causes to be presented, to the state a claim for payment under the medicaid program knowing that such claim is false or fraudulent"; (ii) "makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the medicaid program paid for or approved by the state knowing such record or statement is false"; or, (iii) "makes, uses, or causes to be made or used a record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state, relative to the medicaid program, knowing that such record or statement is false."  N.M.S.A. § 27-14-4(A), (C), (E).

Similarly, the NMFATA provides, in relevant part, that a person shall not: (i) "knowingly present, or cause to be presented, to an employee, officer or agent of the state or a political subdivision . . . a false or fraudulent claim for payment or approval"; (ii) "knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim"; or, (iii) "knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state or a political subdivision[.]"  N.M.S.A. § 44-9-3(A)(1), (2), (8).  Courts look to FCA case law to construe the NMMFCA and NMFATA.  See State ex rel. Foy v. Austin Capital Management, Ltd., 2015-NMSC-025, ¶ 25, 355 P.3d 1, 9 (stating that the NMFATA "closely tracks the longstanding federal" FCA); United States v. Dental Dreams, LLC, 307 F. Supp. 3d 1224, 1240 (D.N.M. 2018)(Herrera, J.)("New Mexico state courts have also looked to federal precedent construing the FCA to provide guidance on the [NM]MFCA."); State ex rel. King v. Behavioral Home Care, Inc.,

- 11 -

2015-NMCA-035, ¶ 17, 346 P.3d 377, 384, cert. dismissed, 2015-NMCERT-004, 348 P.3d 695 (Apr. 3, 2015)(same).

The FCA, NMFATA, and NMMFCA bar a relator's claim if the claim is based on or substantially the same as publicly disclosed allegations or transactions. See 31 U.S.C. § 3730(e)(4)(A); N.M.S.A. § 27-14-10(C); id. § 44-9-9(D). If the "public disclosure bar" applies, NMFATA claims may be dismissed. N.M.S.A. § 44-9-9(D). On the other hand, the FCA and NMMFCA provide that, even if the public disclosure bar applies, a relator may proceed with a qui tam claim if the relator is an "original source" of the allegations in the complaint. 31 U.S.C. § 3730(e)(4)(A), (B). See N.M.S.A. § 27-14-10(C).

If a relator's claims are not barred, the FCA and NMFATA provide for an award to the relator, under certain circumstances, if the State of New Mexico obtains an award through an "alternate remedy." N.M.S.A. § 3730(c)(5); id. § 44-9-6(H). See generally United States ex rel. Kuriyan v. HCSC Ins. Servs. Co., No. CIV. 16-1148, 2021 WL 5998603, at *18-21 (D.N.M. Dec. 20, 2021)(Browning, J.)("Kuriyan I")(discussing FCA, NMFATA, and NMMFCA). The NMMFCA does not provide for an award to relators based on an alternate remedy. See N.M.S.A. § 3730; id. § 27-14-9. See United States ex rel. Kuriyan v. HCSC Ins. Servs. Co., No. CIV 16-1148, 2022 WL 704130, at *1-3 (D.N.M. Mar. 9, 2022)("Kuriyan II")(discussing FCA, NMFATA, and NMMFCA).

1.    **FCA.**

The FCA "imposes significant penalties on those who defraud the government," Universal Health Servs., Inc. v. United States, 579 U.S. 176, 136 S. Ct. 1989, 1995 (2016), and imposes civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," Universal Health Servs. v. United States ex rel. Escobar, 136 S. Ct. at 1999 (quoting 31 U.S.C. § 3729(a)). The FCA's purpose is "encourag[ing] 'whistleblowers

to act as private attorneys-general' in bringing suits for the common good." Walburn v. Lockheed Martin Corp., 431 F.3d 966, 970 (6th Cir. 2005)(quoting United States ex rel. Taxpayers Against Fraud v. GE., 41 F.3d 1032, 1041-42 (6th Cir. 1994)).  The FCA "limit[s] . . . the court's power to hear certain duplicative qui tam suits."  United States ex rel. Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276 (10th Cir. 2004).   The FCA also recognizes the need "to discourage opportunistic plaintiffs from bringing parasitic lawsuits whereby would-be relators merely feed off a previous disclosure of fraud."  Walburn v. Lockheed Martin Corp., 431 F.3d at 970.  See United States ex rel. Grynberg, 390 F.3d at 1278 (noting that the FCA's "qui tam provisions are designed to encourage private citizens to expose fraud but to avoid actions by opportunists seeking to capitalize on public information."); Hill v. Vanderbilt Capital Advisors, LLC, 834 F. Supp. 2d 1228, 1242 (D.N.M. 2011)(Browning, J.).

An FCA action may commence in one of two ways.  First, the United States itself may bring an action against an alleged false claimant.  See 31 U.S.C. § 3730(a).  Second, a private person -- known as a relator -- may bring a qui tam action against the alleged false claimant "for the person and for the United States Government," and "in the name of the Government."  31 U.S.C. § 3730(b). "Qui tam" is short for the Latin phrase "qui tam pro domino rege quam pro se ipso in hac parte sequitur," which translates to "who pursues this action on our Lord the King's behalf as well as his own."  Vermont Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 769, n.1 (2000).  Qui tam actions "appear to have originated around the end of the 13th century, when private individuals who had suffered injury began bringing actions to the royal courts on both their own and the Crown's behalf."  Vermont Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. at 774.  Although the Attorney General may bring suit for § 3729 violations under § 3730, § 3730 states that a person may bring suit on the United States' behalf and that the qui tam plaintiff is entitled to a portion of the damages if the United states declines to

intervene.  See 31 U.S.C. § 3730(d).  Although the United States suffers the injury, a qui tam relator under the FCA has Article III standing to pursue their claim.  See Vermont Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. at 777.  Under the FCA, however, States are not subject to qui tam liability.  See Vermont Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. at 783.

Under the FCA, a qui tam relator may not recover if the relator's action relies on public information.  See 31 U.S.C. § 3730(e)(4)(A).  The so-called "public disclosure bar" states that a court "shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in either: (i) a "Federal criminal, civil, or administrative hearing in which the Government or its agent is a party"; (ii) "in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation"; or (iii) "from the news media." 31 U.S.C. § 3730(e)(4)(A).  The public-disclosure bar does not bar, however, actions that the Attorney General brings or actions that a private person who is "an original source of the information" brings.  31 U.S.C.  § 3730(e)(4)(A).

By its terms, the original-source exception contemplates that some qui tam actions should survive the public-disclosure bar even though their allegations are "substantially the same as publicly disclosed allegations," because they involve information that "materially add[s]" to the publicly disclosed information.  United States ex rel. Reed v. KeyPoint Gov't Sol. 923 F.3d 729, 757 (10th Cir. 2019).  To qualify as an original source, a qui tam relator must demonstrate that: (i) they have "direct and independent knowledge of the information on which the allegations are based"; and (ii) they "voluntarily provided such information to the government prior to filing suit." United States ex rel. Precision Co. v. Koch Indus., Inc. 871 F.2d 548, 553 (10th Cir. 1992).  In other words, to recover, a qui tam relator must "bring something to the table that would add value

for the government." United States ex rel. Maur v. Hage-Korban, 981 F.3d 516 (6th Cir. 2020). To meet its burden to show that it is an original source, see Kennard v. Comstock Res., Inc., 363 F.3d 1039, 1044 (10th Cir. 2004), a qui tam relator must provide more than "'unsupported, conclusory allegations,'" United States ex rel. Stone v. Rockwell Int'l Corp., 282 F.3d 787, 800 (10th Cir. 2002)(quoting United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1162 (10th Cir. 1999)). See Kuriyan I, 2021 WL 5998603, at *38-49 (discussing FCA, NMFATA, and NMMFCA); Kuriyan II, 2022 WL 704130, at *1-3 (discussing FCA, NMFATA, and NMMFCA).

2.      **NMFATA.**

In 2007, the New Mexico Legislature passed the NMFATA, a false claims act with a qui tam provision. See N.M.S.A. §§ 44-9-1 to -14. The NMFATA contains a first-to-file provision, stating: "When a person brings an action pursuant to this section, no person other than the attorney general on behalf of the state may intervene or bring a related action based on the facts underlying the pending action." N.M.S.A. § 44-9-5E. The NMFATA also contains the following non-exclusivity clause: "The remedies provided for in the Fraud Against Taxpayers Act are not exclusive and shall be in addition to any other remedies provided for in any other law or available under common law." N.M.S.A. § 44-9-14.

The federal analog to the NMFATA is the FCA, 31 U.S.C. §§ 3729-33, which has as its purpose "encourag[ing] 'whistleblowers to act as private attorneys-general' in bringing suits for the common good." Walburn v. Lockheed Martin Corp., 431 F.3d 966, 970 (6th Cir. 2005)(quoting United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co., 41 F.3d 1032, 1041-42 (6th Cir. 1994)). It acts as a "jurisdictional limit on the court's power to hear certain duplicative qui tam suits." United States ex rel. Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276 (10th Cir. 2004). The FCA also recognizes the need "to discourage opportunistic plaintiffs

from bringing parasitic lawsuits whereby would-be relators merely feed off a previous disclosure of fraud." Walburn v. Lockheed Martin Corp., 431 F.3d at 970. See United States ex rel. Grynberg, 390 F.3d at 1278 ("The False Claims Act's qui tam provisions are designed to encourage private citizens to expose fraud but to avoid actions by opportunists seeking to capitalize on public information."). A NMFATA violator is liable for three times the actual losses that the State suffered, a civil penalty between $5,000.00 and $10,000.00, the cost to litigate the action, and reasonable attorney's fees. See N.M.S.A. § 44-9-3C. "Up to another thirty percent of the damage award is allocated to reward the qui tam plaintiff for exposing fraud and corruption in state government." State ex rel. Foy v. Austin Capital Mgmt., Ltd., 2015-NMSC-025 ¶ 40, 355 P.3d 1, 1 (citing N.M.S.A. § 44-9-7(B)). See Kuriyan I, 2021 WL 5998603, at *38-49 (discussing FCA, NMFATA, and NMMFCA); Kuriyan II, 2022 WL 704130, at *1-3 (discussing FCA, NMFATA, and NMMFCA); Hunt v. Cent. Consol. Sch. Dist., 951 F. Supp. 2d 1136, 1242-46 (D.N.M. 2013)(Browning, J.)(discussing NMFATA's whistleblower protections); Hill v. Vanderbilt Cap. Advisors, LLC, 834 F. Supp. 2d 1228, 1261-62 (D.N.M. 2011)(Browning, J.)(discussing NMFATA's disclosure bars).

## LAW REGARDING STATUTORY CONSTRUCTION

When interpreting statutes, the Court must start with the plain language. See, e.g., Been v. O.K. Industries, Inc., 495 F.3d 1217, 1227 (10th Cir. 2007)("We review issues of statutory construction de novo, interpret[ing] the words of the statute in light of the purposes Congress sought to serve."). "It is well established that 'when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.'" Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)(quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000)). "Courts indulge 'a strong presumption that Congress expresses its intent through the language it chooses.

Therefore, when the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it.'" United Kingdom Ministry of Defence v. Trimble Navigation Ltd., 422 F.3d 165, 171 (4th Cir. 2005)(quoting Sigmon Coal Co. v. Apfel, 226 F.3d 291, 305 (4th Cir. 2000)). See Public Lands Council v. Babbitt, 167 F.3d 1287, 1314 (10th Cir. 1999)(Seymour, C.J.)("In examining . . . [statutory] language, we assume that the words chosen by Congress are employed in their ordinary sense and accurately express Congress' [ ] legislative purpose."). See, e.g., United States v. Delorme, No. CR 19-2322, 2023 WL 8020262, at *17-20 (D.N.M. Nov. 17, 2023)(Browning, J.); United States v. Teston, No. CR 22-1400, 2023 WL 3390968, at *8-16 (D.N.M. May 5, 2023)(Browning, J.); United States v. Janzad, No. CR 23-0346, 2024 WL 3552404, at *9-24 (D.N.M. July 26, 2024)(Browning, J.).

## LAW REGARDING DIVERSITY JURISDICTION AND ERIE

Under Erie, a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). Accord Mem. Hosp. v. Healthcare Realty Tr. Inc., 509 F.3d 1225, 1229 (10th Cir. 2007). The Court has held that, if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law[,] . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v. Dentsply Int'l., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an Erie prediction should look first to the words of the state supreme court." Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M.

2015)(Browning, J.).[3]  If the Court finds only an opinion from the Court of Appeals of New Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that, where the only opinion on point is "from the Court of Appeals, . . . the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do" and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")).[4]  The Court also may rely on Tenth Circuit decisions interpreting New Mexico

---

[3]In performing its Erie-mandated duty to predict what a State supreme court would do if faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may sometimes contradict the State supreme court's own precedent if the federal court concludes that the State supreme court would, given the opportunity, overrule its earlier holding, see Anderson Living Tr. v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1247 n.30 (2014)(Browning, J.). Courts should, obviously, be reticent to formulate an Erie prediction that conflicts with State-court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between cases filed in State and federal courts, as the old State supreme court precedent usually binds State trial courts.  The factors to which a federal court should look before making an Erie prediction that a State supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the State supreme court decision from which the federal court is considering departing -- the younger the State case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the State courts -- especially the State supreme court -- have placed on the State decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the State decision articulates, especially if the State supreme court explicitly has called an older case's holding into question; (iv) changes in the composition of the State supreme court, especially if mostly dissenting justices from the earlier State decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times.  See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17.  In short, a State supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent State-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

[4]The Supreme Court addresses what the federal courts may use when there is not a decision

on point from the State's highest court:

> The highest state court is the final authority on state law (<u>Beals v. Hale</u>, 4 How. 37, 54 . . . ; <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64, 78 . . . ), but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State.  <u>See</u> <u>Ruhlin v. New York Life Insurance Co.</u>, 304 U.S. 202, 209. . . [(1938)].  An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in <u>West v. American Telephone and Telegraph Co.</u>, 311 U.S. 223 . . . [(1940)], decided this day.  It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.
>
> . . . .
>
> We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court (<u>Erie Railroad Co. v. Hilt</u>, 247 U.S. 97, 100 . . . [(1918)]; <u>Erie Railroad Co. v. Duplak</u>, 286 U.S. 440, 444 . . . [(1932)]), and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.
>
> . . . .
>
> The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

<u>Fid. Union Tr. Co. v. Field</u>, 311 U.S. 169, 177-80 (1940)(footnotes omitted).  The Supreme Court has softened this position over the years; federal courts are no longer bound by State trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  <u>Comm'r v. Estate of Bosch</u>, 387 U.S. at 465 (citing <u>King v. Order of United Commercial Travelers</u>, 333 U.S. 153, 159 (1948)).  See 17A James Wm. Moore et al., <u>Moore's Federal Practice</u> § 124.20 (3d ed. 1999)("<u>Moore's</u>")("[F]ederal courts should follow decisions of intermediate state appellate courts unless persuasive data indicate that the highest state court would decide the issue differently . . . [and] federal courts should give some

law.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1243 & n.30

(D.N.M. 2014)(Browning, J.).[5]  Ultimately, "the Court's task is to predict what the state supreme

_____

weight to state trial courts decisions.").

[5]In determining the proper weight to accord Tenth Circuit precedent interpreting New Mexico law, the Court must balance the need for uniformity between federal court and State court interpretations of State law with the need for uniformity among federal judges.  If the Court adheres too rigidly to Tenth Circuit case law, ignoring changes to a State's law in the ensuing years, then parties litigating State law claims will be subject to a different body of substantive law, depending on whether they litigate in State court or federal court.  This result frustrates the purpose of Erie, which held that federal courts must apply State court interpretations of State law, rather than their own, in part so that parties achieve a consistent result regardless of the forum.  This consideration pulls the Court toward according Tenth Circuit precedent less weight and according State court decisions issued in the ensuing years more weight.  On the other hand, when the State law is unclear, it is desirable for there to at least be uniformity among federal judges as to its proper interpretation.  Otherwise, different federal judges within the same Circuit -- or even the same district, as district courts' decisions are not binding, even upon themselves -- would be free to adopt differing interpretations of a State's law.  This consideration pulls the Court towards a stronger respect for vertical stare decisis, because a Tenth Circuit decision on point -- regardless whether it accurately reflects State law -- at least provides consistency at the federal level, so long as federal district judges must follow it.

The Court must decide how to weigh Tenth Circuit case law against more recent State court decisions, choosing a point on the spectrum between the two extremes: rigidly adhering to Tenth Circuit precedent unless there is intervening case law directly on point from the State's highest court, on one end, and independently interpreting the State law, regarding the Tenth Circuit precedent as no more than persuasive authority, on the other.  The Court notes that, in striking this balance, it is generally more concerned about systemic inconsistency between the federal courts and the State courts than it is about inconsistency among federal judges.  Judges, even those within a jurisdiction with ostensibly identical governing law, sometimes interpret and apply the law differently from one another; this inconsistency is part and parcel of a common-law judicial system.  More importantly, litigants seeking to use forum selection to gain a substantive legal advantage cannot easily manipulate such inconsistency: cases are assigned randomly to district judges in this and many federal districts; and, regardless, litigants cannot know for certain how a given judge will interpret the State law, even if they could determine the identity of the judge pre-filing or pre-removal.  All litigants know in advance is that whomever federal district judge they are assigned will look to the entirety of the State's common law in making his or her determination -- the same as a State judge would.  Systemic inconsistency between the federal courts and State courts, on the other hand, not only threatens the principles of federalism, but litigants may more easily manipulate the inconsistency.  When the Tenth Circuit issues an opinion interpreting State law, and the State courts subsequently shift away from that interpretation, litigants -- if the district courts strictly adhere to the Tenth Circuit opinion -- have a definite substantive advantage in choosing the federal forum over the State forum, or vice versa.

The Court further notes that district courts may be in a better position than the Tenth Circuit to be responsive to changes in State law.  Tenth Circuit decisions interpreting a particular State's

law on a specific issue are further apart in time than the collective district courts' decisions are. More importantly, the Tenth Circuit typically does not address such issues with the frequency that the State's courts do. Accordingly, Tenth Circuit precedent can lag behind State law developments -- developments that the district courts may be nimble enough to perceive and adopt. Additionally, much of the benefit of having a consistent Tenth Circuit-wide interpretation of a particular State's law is wasted. Other than Oklahoma, every State encompassed by the Tenth Circuit contains only one federal judicial district, and there is relatively little need for federal judges in Wyoming and Kansas to have a uniform body of New Mexico law to which to look. Last, the Court notes, respectfully, that district courts may be in a better position than the Tenth Circuit to develop expertise on the State law of the State in which they sit. Every federal judicial district in the nation, except the District of Wyoming, covers at most one State. It is perhaps a more workable design for each district court to keep track of legal developments in the State law of its own State than it is for the Tenth Circuit to monitor separate legal developments in eight States. The Tenth Circuit used to follow this rationale in applying a clearly erroneous standard of review to district judges' State law decisions with no controlling State supreme court precedent. See Weiss v. United States, 787 F.2d 518, 525 (10th Cir. 1986); Rawson v. Sears, Roebuck, & Co., 822 F.2d 908, 923 (10th Cir. 1987)(McKay, J., dissenting)(collecting cases). Since the mid-1980s, however, the Tenth Circuit has abandoned that rationale and applied a de novo standard of review to district judge decisions applying State law with no governing State supreme court precedent. See Rawson v. Sears, Roebuck, & Co., 822 F.2d at 908. See also id. at 923 (McKay, J., dissenting)(noting that the majority had abandoned the "sanctified" clearly erroneous standard or the "so-called local-judge rule" in its analysis). The Court regrets the Tenth Circuit's retreat from the clearly erroneous standard.

Having outlined the relevant considerations, the Court concludes that the proper stance on vertical stare decisis in the context of federal court interpretations of State law is as follows: the Tenth Circuit's cases are binding as to their precise holding -- what the State law was on the day the opinion was published -- but lack the positive precedential force that its cases interpreting a federal statute or the Constitution of the United States of America possess. A district court considering a State law issue after the publication of a Tenth Circuit opinion on point may not come to a contrary conclusion based only on State court cases that the Tenth Circuit had available and considered, but it may come to such a conclusion based on intervening State court cases.

When interpreting State law, the Tenth Circuit does not and cannot issue a case holding that $x$ is the law in New Mexico; it holds that the proper interpretation of New Mexico law, at the time the opinion is released, is $x$. Its holdings are descriptive and not prescriptive -- interpretive and not normative. Because federal judicial opinions lack independent substantive force on State law issues, but possess such force regarding federal law issues, the Court concludes that the following is not an unfair summary of the judicial interpretive process: (i) when interpreting federal law, the federal appellate courts consider the existing body of law, and then issue a holding that both reflects and influences the body of law; that holding subsequently becomes a part of the body of law; but (ii) when interpreting State law, the federal appellate courts consider the existing body of law, and then issue a holding that only reflects the body of law; that holding does not subsequently become a part of the body of law. The federal district courts are bound to conclude that the Tenth Circuit's reflection of the then-existing body of law was accurate. The question is whether they should build a doctrine atop the case and use the existence of the Tenth Circuit's case to avoid any responsibility to consider independently the whole body of State law that exists when the time comes that diversity litigants raise the issue in their courtrooms. Giving such effect to the

- 21 -

Tenth Circuit's interpretations of State law is at tension with <u>Erie</u>, giving independent substantive effect to federal judicial decisions -- <u>i.e.</u>, applying federal law -- in a case brought in diversity.

<u>Erie</u>'s purpose is well-known and simple, and the Court should not complicate it beyond recognition: it is that the same substantive law governs litigants' cases regardless whether they are brought in a federal or State forum. For simplicity's sake, most courts have settled on the formulation that "the federal court must attempt to predict how the States' highest court would rule if confronted with the issue." <u>Moore's</u> § 124.22[3] (citing <u>Comm'r v. Estate of Bosch</u>, 387 U.S. at 465 ("[A]n intermediate appellate State court [decision] is a datum for ascertaining State law which is not to be disregarded by a federal court <u>unless it is convinced by other persuasive data that the highest court of the State would decide otherwise</u>." (quoting <u>West v. Am. Tel. & Tel. Co.</u>, 311 U.S. 223, 237 (1940))(emphasis in <u>Comm'r v. Estate of Bosch</u>)). This statement may not be the most precise formulation if the goal is to ensure identical outcomes in State and federal court -- the Honorable Milton I. Shadur, former United States District Judge for the Northern District of Illinois, looks to State procedural rules to determine in which State appellate circuit the suit would have been filed were it not in federal court, and then applies the State law as that State circuit court interprets it, <u>see</u> <u>Abbott Labs. v. Granite State Ins. Co.</u>, 573 F. Supp. 193, 196-200 (N.D. Ill. 1983)(noting that the approach of predicting the State supreme court's holdings will often lead to litigants obtaining a different result in federal court than they would in State court, where only the law of the State circuit in which they filed -- and certainly not nonexistent, speculative State supreme court law -- governs) -- but it is a workable solution that has achieved consensus. <u>See</u> <u>Allstate Ins. Co. v. Menards, Inc.</u>, 285 F.3d 630, 637 (7th Cir. 2002)("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of State law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This formulation, built out of ease-of-use, does not relieve courts of their Supreme Court-mandated obligation to consider State appellate and trial court decisions. To the contrary, even influential authors' non-judicial writings, State supreme court justices' statements, the closeness of the vote on a prior case addressing the issue, and personnel changes on the court -- considerations that would not inform properly a federal court's analysis of federal law -- validly may come into play. The question is whether the district courts must abdicate, across-the-board, the "would decide" aspect of the <u>Erie</u> analysis to their parent appellate courts when the Court of Appeals has declared an interpretation of State law.

The <u>Erie</u> doctrine results in federal cases that interpret State law withering with time. While cases interpreting federal law become more powerful over time -- forming the groundwork for doctrines, growing upward from one application (Congress may create a national bank) to many (Congress may set quotas on wheat-growing for personal consumption), expanding outward from the general (States must grant criminal jury trials) to the specific (the jury need not be twelve people, nor must it be unanimous) -- federal cases interpreting State law often become stale. New State court cases -- even when not rebuking directly the federal court's statement of law -- alter the common-law legal landscape with their dicta, their insinuations, and their tone. The Supreme Court, which picks its cases sparingly and for maximum effect, almost never grants certiorari to resolve issues of State law.

The Court's views on <u>Erie</u>, of course, mean little if the Tenth Circuit does not agree. In <u>Wankier v. Crown Equipment Corp.</u>, 353 F.3d 866 (10th Cir. 2003), the Tenth Circuit says:

> Where no controlling state decision exists, the federal court must attempt to predict

what the state's highest court would do. In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*. Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue.

Wankier v. Crown Equip. Corp., 353 F.3d at 866. This passage indicates that the Tenth Circuit permits a district court to deviate from its view of State law only on the basis of a subsequent case "of the state's highest court." The American Heritage Dictionary of the English Language 1402 (William Morris ed., New College ed. 1976)(defining "unless" as "[e]xcept on the condition that; except under the circumstances that"). A more aggressive reading of the passage -- namely the requirement that the intervening case "resolv[e] the issue" -- might additionally compel the determination that any intervening case law must definitively and directly contradict the Tenth Circuit interpretation to be considered "intervening."

It is difficult to know whether the limitation of the Honorable Michael W. McConnell, then-United States Circuit Judge for the Tenth Circuit, in Wankier v. Crown Equip. Corp. of "intervening decision" to cases from the highest State court was an oversight or intentional. Most of the Tenth Circuit's previous formulations of this rule have defined intervening decisions inclusively as all subsequent decisions of "that state's courts," a term which seems to include trial and intermediate appellate courts. Even Koch v. Koch Industries, Inc., 203 F.3d 1202, 1231 (10th Cir. 2000), the primary authority upon which Wankier v. Crown Equipment Corp. relies, uses the more inclusive definition. In fact, Wankier v. Crown Equipment Corp. quotes its relevant passage:

> In the absence of intervening Utah authority indicating that a plaintiff is not required to prove a safer, feasible alternative design, we are bound to follow the rule of *Allen* [v. Minnstar, Inc., 8 F.3d 1470 (10th Cir. 1993), a Tenth Circuit case interpreting an issue of Utah law], as was the district court. "Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." Koch v. Koch Indus., Inc., 203 F.3d at 1231.

Wankier v. Crown Equip. Corp., 353 F.3d at 867.

Regardless whether the decision to limit the intervening authority a district court can consider was intentional or not, the Tenth Circuit has picked it up and run with it. In Kokins v. Teleflex, Inc., 621 F.3d 1297 (10th Cir. 2010), the Tenth Circuit, quoting Wankier v. Crown Equipment Corp., refused to consider an opinion from the Court of Appeals of Colorado holding directly the opposite of an earlier Tenth Circuit interpretation of Colorado law. See Kokins v. Teleflex, Inc., 621 F.3d at 1297 ("[T]he Colorado Court of Appeals decided *Biosera*[, Inc. v. Forma Scientific, Inc., 941 P.2d 284 (Colo. Ct. App. 1998)], so it is not an 'intervening decision of the state's *highest court*.'" (emphasis in original)(quoting Wankier v. Crown Equip. Corp., 353 F.3d at 866)).

The Tenth Circuit has set forth a stringent restriction on its district courts' ability to administer independently the Erie doctrine. More importantly, the Tenth Circuit's view may be at tension with the above-quoted Supreme Court precedent, as well as with its own prior case law.

- 23 -

court would do."  Wade v. EMCASCO Ins. Co., 483 F.3d at 666.

## ANALYSIS

The Court undertakes its analysis in two sections.  First, the Court determines that rules 59 and 60 of the Federal Rules of Civil Procedure do not permit the Court to amend the Final Judgment as to Kuriyan's Counts I, II, and III, because Kuriyan's attorney states that Kuriyan is not pursuing those Counts.  Second, the Court concludes that rules 59 and 60 do not permit the Court to amend the Final Judgment as to Kuriyan's Count IV, because the Court commits no error in its interpretation of the NMFATA.

## I.    THE COURT WILL NOT AMEND THE FINAL JUDGMENT AS TO COUNTS I, II, AND III.

Kuriyan first asks this Court to amend the Final Judgment as to Counts I, II, and III.  See Motion to Amend at 1.  Kuriyan asserts four arguments.  First, Kuriyan argues that the Final Judgment's dismissal of Counts I, II, and III's is improper, because neither he nor his counsel at the time are in a proper position to "waive," on the taxpayers behalf, a valid claim against the MCO Defendants.  See Motion to Amend at 7.  Second, Kuriyan contends that the Court should amend the Final Judgment, because the Court denies the Motion By All Defendants to Dismiss Relator's Third Amended Complaint, filed November 5, 2020 (Doc 144)("Motion to Dismiss").  Motion to Amend at 8.  Third, Kuriyan argues that the Court should amend the Final Judgment, because Kuriyan objects to his former counsel's statements that Kuriyan will not pursue Counts I, II, and III.  See Motion to Amend at 8.  Fourth, Kuriyan contends that the Court should amend the Final Judgment, because his current counsel could not have anticipated that document production

---

Moore's lists the Tenth Circuit as having been, at one time, a "court[ that] hold[s] that a prior federal appellate decision [interpreting state law] is persuasive."  Moore's § 124.22[4] (citing State Farm Mut. Auto. Ins. v. Travelers Indem. Co., 433 F.2d 311, 312 (10th Cir. 1970)).  Still, the Court is bound to abide by the Tenth Circuit's interpretation of Erie.

"would yield demonstrable evidence of the Defendants' FCA and NMMFCA liability under Medicaid's 60 Day Rule." Motion to Amend at 9. Addressing each argument in turn, the Court concludes that it will not amend the Final Judgment as to Counts I, II, and III.

Because the Court enters a Final Judgment, the Court must analyze any amendment under rule 59 or rule 60. Servants of the Paraclete v. Does, 204 F.3d at 1012. Rule 59 and rule 60 motions for reconsideration are "inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of the Paraclete v. Does, 204 F.3d at 1012. Under rule 59, "grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of the Paraclete v. Does, 204 F.3d at 1012. "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of the Paraclete v. Does, 204 F.3d at 1012. A district court has considerable discretion in ruling on a motion to reconsider. See Phelps, 122 F.3d at 1324. In contrast, rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representatives from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

(5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)    any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

## A. THE COURT WILL NOT AMEND THE FINAL JUDGMENT AS TO COUNTS I, II, AND III, BASED ON KURIYAN'S WAIVER ARGUMENT.

Kuriyan argues that the Court should amend its Final Judgment dismissing Counts I, II, and III, because his former counsel, Mr. Androphy, is not in a proper position to "waive" valid claims against the Defendants. Motion to Amend at 7. He contends that no waiver occurs, because there is no "intentional relinquishment or abandonment of a known right." Motion to Amend at 9. Although Kuriyan is correct that he has not waived these claims for purposes of future litigation, the Court will not amend the Final Judgment, because Kuriyan abandons those claims in this action.

To obtain relief, Kuriyan must satisfy either rule 59 or rule 60. Under rule 59, he must show: (i) an intervening change in controlling law; (ii) previously unavailable evidence; or (iii) the need to correct clear error or prevent manifest injustice. See Servants of the Paraclete v. Does, 204 F.3d at 1012. Rule 60(b), in turn, permits relief for "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, or other limited circumstances. Fed. R. Civ. P. 60(b). Although Kuriyan does not invoke either rule expressly, his argument fits only within rule 59's clear-error prong and rule 60's "mistake" provision, because he identifies no intervening change in law, no newly discovered evidence, and no fraud or other extraordinary circumstance. The Court commits no clear error, and its ruling is not mistake, inadvertence, surprise, or excusable neglect.

In the MOO, the Court dismisses Counts I, II, and III, because Kuriyan represents that he

does not intend to proceed to trial with those claims independent of his alternative remedy claims. See MOO at 64. Kuriyan maintains those counts for a single purpose: to preserve a qui tam action on an alternate-remedy theory. See Plaintiff/Relator's Opposed Third Motion for Award from Alternate Remedy at 12, filed February 5, 2021 (Doc. 173). Once the Court resolves the qui tam theory, it dismisses Counts I, II, and III so that Kuriyan can pursue an appeal on what he describes as his "sole pursuit." MOO at 64. Based on those representations, the Court concludes that Kuriyan intentionally abandons Counts I, II, and III in this action. The Supreme Court has instructed that "waiver is the 'intentional relinquishment or abandonment of a known right.'" United States v. Olano, 507 U.S. 725, 733 (1993)(quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Tenth Circuit cases illustrate this principle.

In United States v. Gambino-Zavala, 539 F.3d 1221 (10th Cir. 2008), the defendant seeks appellate review on whether the contraband he possesses is in plain view. See 539 F.3d at 1227. The Tenth Circuit determines that he abandons that argument, because the defendant's attorney does not contest the prosecutor's statement that it is undisputed that the contraband is in plain view. See 539 F.3d at 1227. The Tenth Circuit later explains: "Defendant counsel obviously knew of the issue. By his action, the defendant 'affirmatively abandoned his challenge to the officers' testimony about the contraband and waived any claim on appeal.'" United States v. Zubia-Torres, 550 F.3d 1202, 1205 (10th Cir. 2008)(analyzing United States v. Gambino-Zavala, 539 F.3d 1221 (10th Cir. 2008)).

By contrast, in LKL Associates, Inc. v. Union Pacific Railroad Company, 17 F.4th 1287 (10th Cir. 2021), the Tenth Circuit finds no abandonment where the record reflects a misunderstanding rather than an intentional relinquishment. See 17 F.4th at 1304. The Tenth Circuit states: "The court thought that counsel would make the case go away by distilling the complaint down to a few core counts and abandoning the rest. Meanwhile, counsel intended to

- 27 -

make the case go away by obtaining a ruling on an important legal issue that would rapidly resolve the remaining claims." 17 F.4th at 1303. According to the Tenth Circuit, "counsel was clearly trying to expedite the litigation by resolving a central legal question -- and not offering his clients' causes of action as bargaining chips." 17 F.4th at 1304. Importantly, counsel said nothing about abandoning the claims at any point in any hearing. See 17th F.4th at 1304. Instead, counsel's phrasing contemplates only a simplified and expedited resolution:

> For example, reviewing some of the language the district court relied upon in finding abandonment, counsel said that a ruling regarding the easement's scope would "resolve this whole case" and obviate the need for a trial. . . . A claim that need not be tried to be resolved, or that is effectively determined by ascertaining a fundamental legal principle, is very different from a claim that has been abandoned. As this case illustrates, only the former can be appealed on its merits.

17 F.4th at 1304.

The Court determines that the statements and filings by Kuriyan's former counsel, Mr. Androphy and others, are more akin to the situation in United States v. Gambino-Zavala than to the one in LKL Associates, Inc. v. Union Pacific Railroad Company. The record shows repeated, unequivocal representations that Kuriyan will not pursue Counts I, II, and III. Kuriyan originally files this case on October 18, 2016. See Complaint at 1 (Doc. 1). On February 22, 2019, Mr. Androphy enters as Kuriyan's counsel. See Order Granting In Part Plaintiff's Motion to Substitute Counsel at 1 (Doc. 21). Thereafter, Mr. Androphy repeatedly states that Kuriyan will not seek further damages and will not litigate those counts, but instead is maintaining them for a qui tam action on an alternate-remedy theory. See Plaintiff/Relator's Opposed Third Motion for Award from Alternate Remedy at 12. See Plaintiff/Relator Jacob Kuriyan's Consolidated Response to Defendants' Motions to Dismiss at 1 (Doc. 130)("As a preliminary matter, Relator does not intend to seek civil penalties or further damages against Defendants once his alternate remedy dispute with the United States and State of New Mexico [] has been resolved."); Plaintiff/Relator Jacob

Kuriyan's Response to Defendants' Motion to Dismiss Relator's 3rd Amended Complaint at 1 (Doc. 145); Joint Status Report and Provisional Discovery Plan at 4 (Doc. 181)("Once Relator's pending alternate remedy motion has been fully resolved (including any appeals related to it), this case will essentially have concluded. Relator will not litigate further damages against Defendants."); Agreed Order Staying Discovery at 1 (Doc. 194); Transcript of Hearing at 56:3-9 (taken October 28, 2022)(Lieff), filed January 24, 2024 (Doc. 402)("October 28, 2022, Tr."). Kuriyan's former counsel says:

> And I haven't figured out yet, frankly, why the insurance companies are even here, since we've said to them: Thank you very much, you paid the money to the federal government, to the State of New Mexico. Go on home. Why are you spending more money for attorneys' fees? Really -- but it makes you wonder what they are doing.

October 28, 2022, Tr. at 56:3-9 (Lieff). These are not ambiguous statements about efficiency or case management. They are express disclaimers of any intent to pursue the claims. Unlike in LKL Associates, Inc. v. Union Pacific Railroad Company, where counsel's statements are susceptible to misunderstanding, Kuriyan's former counsel's statements consistently and unmistakably disavowed further litigation of Counts I, II, and III. See 17 F.4th at 1304. They mirror United States v. Gambino-Zavala, where counsel knowingly abandons an issue.

Moreover, the parties and the Court rely on those representations. All parties -- including Kuriyan -- agree to stay discovery against the MCO Defendants in this matter. See Agreed Order Staying Discovery at 1, filed March 12, 2021 (Doc. 194). Only after years of litigation, and after Magistrate Judge Khalsa issue dispositive proposed findings, does Kuriyan's new counsel file an eleventh-hour motion for summary judgment on those counts. See Proposed Findings and Recommended Disposition, filed August 28, 2024 (Doc. 409); Kuriyan MSJ at 1. A late change in litigation strategy does not rewrite the record or negate prior abandonment. See Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)(holding that relief is not available when

the alleged mistake stems from an attorney's deliberate litigation tactics).

The Court agrees with Kurian, however, that he does not waive Counts I, II, and III for purposes of future litigation. When a party waives a claim, they waive their ability to litigate that claim's merits. See Harris v. City Cycle Sales, Inc., 112 F.4th 1272, 1285 (10th Cir. 2024)("Typically, a waived claim is dead and buried."). Here, Counts I, II, and III are neither dead nor buried. The Court dismisses them without prejudice only after Kuriyan repeatedly represents that he will not pursue them, as their sole purpose is to preserve a qui tam action on an alternate-remedy theory. See Plaintiff/Relator's Opposed Third Motion for Award from Alternate Remedy at 12. Once the Court resolves the alternate-remedy issue, it dismisses the Counts without prejudice, leaving Kuriyan free to appeal the alternate-remedy ruling. See MOO at 64. Because Kuriyan remains able to litigate Counts I, II, and III's merits of in a separate action, he has not waived the Counts in a separate action. Having preserved his right to litigate these Counts elsewhere, Kuriyan cannot now recast their dismissal as an improper waiver, much less as clear error, or mistake under rules 59 or 60.

Finally, allowing amendment here undermines a core premise of judicial administration: that district courts must be able to rely on counsel's representations in managing their dockets. Courts routinely make consequential case-management decisions -- staying discovery, narrowing issues, and structuring proceedings -- based on what attorneys tell them. See Kovacs v. Hershey Co., 2006 WL 2781591, at * 8 (D. Colo. September 26, 2006)(Daniel, J.,)("[T]he Court is entitled to rely on representation of counsel as an officer of the Court . . . ."). If parties later can disavow those representations after the Court and opposing parties have relied on them, and even dismissed the case, orderly adjudication would become unworkable. The Court therefore denies the Motion to Amend insofar as it relies on Kuriyan's waiver argument.

**B.      THE COURT WILL NOT AMEND THE FINAL JUDGMENT AS TO COUNTS I,**

**II, AND III, BASED ON KURIYAN'S ARGUMENT THAT THE COURT DENIES THE MOTION TO DISMISS.**

Kuriyan next contends that, because MCO Defendants file a Motion to Dismiss and the Court denies it, MCO Defendants must "live with that" result, requiring the Court to amend its Final Judgment to allow him to pursue Counts I, II, and III.  Motion to Amend at 8.  Kuriyan also asserts that MCO Defendants "circled back" during a later oral argument to extract a concession on those counts but fail, which, in his view, further supports amendment.  Motion to Amend at 8. Neither argument shows that the Court commits clear error or mistake.

To obtain relief, Kuriyan must satisfy either rule 59 or rule 60.  Under rule 59, he must show: (i) an intervening change in controlling law; (ii) previously unavailable evidence; or (iii) the need to correct clear error or to prevent manifest injustice.  See Servants of the Paraclete v. Does, 204 F.3d at 1012. Rule 60(b), in turn, permits relief for "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, or other limited circumstances.  Fed. R. Civ. P. 60(b).  Although Kuriyan does not invoke either rule expressly, his argument fits only within rule 59's clear-error prong and rule 60's "mistake" provision, because he identifies no intervening change in law, no newly discovered evidence, and no fraud or other extraordinary circumstance.  The Court commits no clear error, and its ruling is not mistake, inadvertence, surprise, or excusable neglect.

Kuriyan's suggestion that his opposition to dismissal of Counts I, II, and III shows he always intends to pursue those claims is unpersuasive.  Kuriyan maintains that, although he does not intend to proceed against MCO Defendants, he can prevail against the State of New Mexico on his alternate-remedy theory only if he maintains a valid qui tam action.  See Plaintiff/Relator's Opposed Third Motion for Award from Alternate Remedy at 12.  He therefore opposes dismissal of Counts I, II, and III -- not to pursue them -- but because he opines that having his MCO

Defendant claims are necessary to preserve his claim against the State.  Aside from conclusory

assertions, Kuriyan offers no explanation -- or citation -- showing how this argument establishes

the Court's clear error or mistake in dismissing those counts.

Nor is there support for Kuriyan's suggestion that Mr. Androphy signals an intent to pursue

Counts I, II, and III by refusing to concede them in a hearing.  Although Kuriyan provides no

citation for his proposition, the Court understands him to rely on the following exchange:

> Hamilton [Counsel for the Defendant Health Care Services Corporation]:
>
> We'd like a stipulation no fraud.
>
> | Court: | No fraud. But nobody is going to stand up in a moment, the MCOs -- and I'm not trying to skip you -- nobody is going to stand up and say the MCOs think that Mr. Androphy has to prove your fraud to recover in this case action; right? |
> |---|---|
> | Hamilton: | We did ask for a stipulation that the MCOs didn't commit fraud. |
> | Court: | Right. |
> | Hamilton: | We could basically stay by the wayside. |
> | Court: | Right. |
> | Hamilton: | Relator's counsel does not agree to that.  And we understand that, but that was put out there. |
> | Court: | Well, maybe if everybody is in agreement that they don't have to prove it, they might be a little more flexible on that just for purposes of the case.  But we'll see, we'll see. |

February 2, 2022 Transcript at 51:2-21, filed April 11, 2022 (Doc. 264).  This argument is the

same argument as the waiver argument in different form.  The Court does not speculate about

counsel's subjective beliefs; the question is whether Kuriyan intends to pursue these claims.  On

multiple occasions, Kuriyan's attorney Mr. Androphy represents that he does not intend to pursue

Counts I, II, and III, and that they exist solely to maintain a valid qui tam action.  See

Plaintiff/Relator Jacob Kuriyan's Consolidated Response to Defendants' Motions to Dismiss at 1 (Doc. 130)("As a preliminary matter, Relator does not intend to seek civil penalties or further damages against Defendants once his alternate remedy dispute with the United States and State of New Mexico [] has been resolved."); Plaintiff/Relator Jacob Kuriyan's Response to Defendants' Motion to Dismiss Relator's 3rd Amended Complaint at 1 (Doc. 145); Joint Status Report and Provisional Discovery Plan at 4 (Doc. 181)("Once Relator's pending alternate remedy motion has been fully resolved (including any appeals related to it), this case will essentially have concluded. Relator will not litigate further damages against Defendants."); Agreed Order Staying Discovery at 1 (Doc. 194); Transcript of Hearing at 56:3-9 (taken October 28, 2022)(Lieff), filed January 24, 2024 (Doc. 402)("October 28, 2022, Tr."). Neither Kuriyan nor Mr. Androphy altered that position before the United States and the State of New Mexico submit dispositive motions. Having taken that position, Kuriyan must lie in the bed he makes. The Court therefore denies the Motion to Amend insofar as it relies on Mr. Androphy prevailing on the Motion to Dismiss.

**C.      THE COURT WILL NOT AMEND THE FINAL JUDGMENT AS TO COUNTS I, II, AND III, BASED ON KURIYAN'S ARGUMENT THAT HE OBJECTED TO HIS FORMER COUNSEL MAKING STATEMENTS THAT KURIYAN WILL NOT PURSUE COUNTS I, II, AND III.**

Kuriyan contends that the Court should amend its Final Judgment dismissing Counts I, II, and III, because he is unaware of Mr. Androphy's statement in Kuriyan's Response to Defendants' Motion to Dismiss Relator's 3rd Amended Complaint, filed November 19, 2020 (Doc. 145)("Defendants' Response"), that he will not pursue those Counts. See Motion to Amend at 8. The Defendants counter that Kuriyan's alleged ignorance to that one statement is immaterial, because Mr. Androphy represents to the Court on several occasions that he will not pursue Counts I, II, and III and Kuriyan does not claim ignorance to those statements. See Defendants' Response at 16. The Court agrees with the MCO Defendants that Kuriyan's claimed ignorance to one

statement is immaterial, because his former counsel represents to the Court on several occasions that he will not pursue Counts I, II, and III.

To obtain relief, Kuriyan must satisfy either rule 59 or rule 60. Under rule 59, he must show: (i) an intervening change in controlling law; (ii) previously unavailable evidence; or (iii) the need to correct clear error or prevent manifest injustice. See Servants of the Paraclete v. Does, 204 F.3d at 1012. Rule 60(b), in turn, permits relief for "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, or other limited circumstances. Fed. R. Civ. P. 60(b). Although Kuriyan does not invoke either rule expressly, his argument fits only within rule 59's clear-error prong and rule 60's "mistake" provision, because he identifies no intervening change in law, no newly discovered evidence, and no fraud or other extraordinary circumstance. The Court commits no clear error, and its ruling is not mistake, inadvertence, surprise, or excusable neglect.

Even accepting Kuriyan's claim of ignorance as true, it is immaterial; the Defendants' Response is not the only instance where his counsel disclaims Counts I, II, and III. The Defendants point to a hearing where Kuriyan is present as his attorney states that he will not pursue those Counts against the Defendnats:

> Lieff:    By the way, these answers were to be given by Mercer by June 30, 2015. That's the period of time after the 2014 year. The qui tam case was filed, I believe, in October or November of 2016. Then, suddenly, the insurance companies paid back the money. And I haven't figured out yet, frankly, why the insurance companies are even here, since we've said to them: Thank you very much, you paid the money to the federal government, to the State of New Mexico. Go on home. Why are you spending more money for attorneys' fees? Really -- but it makes you wonder what are they doing?

Transcript of Hearing at 55:23-56:9 (taken October 28, 2022)(Lieff), filed January 24, 2024 (Doc. 402).

Numerous other filings reflect the same position, and Kuriyan -- a very smart man who is detail oriented -- does not assert ignorance of them.  See Plaintiff/Relator Jacob Kuriyan's Consolidated Response to Defendants' Motions to Dismiss at 1 (Doc. 130)("As a preliminary matter, Relator does not intend to seek civil penalties or further damages against Defendants once his alternate remedy dispute with the United States and State of New Mexico [] has been resolved."); Plaintiff/Relator Jacob Kuriyan's Response to Defendants' Motion to Dismiss Relator's 3rd Amended Complaint at 1 (Doc. 145); Joint Status Report and Provisional Discovery Plan at 4 (Doc. 181)("Once Relator's pending alternate remedy motion has been fully resolved (including any appeals related to it), this case will essentially have concluded. Relator will not litigate further damages against Defendants."); Agreed Order Staying Discovery at 1 (Doc. 194). Moreover, under Tenth Circuit precedent, there is nothing novel about the "harshness of penalizing [a] [client] for his attorney's conduct."  Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002).  Kuriyan's ignorance argument therefore does not lead the Court to find an error or mistake that warrants amendment under rules 59 or 60.  The Court therefore denies the Motion to Amend insofar as it relies on Kuriyan's asserted ignorance.

**D.    THE COURT WILL NOT AMEND THE FINAL JUDGMENT AS TO COUNTS I, II, AND III, BASED ON KURIYAN'S ARGUMENT THAT HIS FORMER COUNSEL COULD NOT HAVE ANTICIPATED THAT DOCUMENTS PRODUCTION WOULD YIELD EVIDENCE SUPPORTING FCA AND NMMFAC LIABILITY UNDER MEDICAID'S 60-DAY RULE.**

Kuriyan contends that the Court should amend its Final Judgment dismissing Counts I, II, and III, because Mr. Androphy could not have anticipated four years ago that document production would yield "demonstrable evidence of the Defendants' FCA and NMMFCA liability under Medicaid's 60 Day Rule."  Motion to Amend at 9.  That argument is not sound.  New counsel's review of existing documents -- and a different strategic assessment -- does not alter the fact that Kuriyan's former counsel represents to the Court that Kuriyan would not pursue Counts I, II, and

III when the United States and the State of New Mexico submit dispositive motions.

To obtain relief, Kuriyan must satisfy either rule 59 or rule 60.  Under rule 59, he must show: (i) an intervening change in controlling law; (ii) previously unavailable evidence; or (iii) the need to correct clear error or prevent manifest injustice.  See Servants of the Paraclete v. Does, 204 F.3d at 1012. Rule 60(b), in turn, permits relief for "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, or other limited circumstances.  Fed. R. Civ. P. 60(b).  Although Kuriyan does not invoke either rule expressly, his argument fits only within rule 59's clear-error prong and rule 60's "mistake" provision, because he identifies no intervening change in law, no newly discovered evidence, and no fraud or other extraordinary circumstance.

It does not matter that Kuriyan's new counsel believes that Counts I, II, and III are viable. Kuriyan's former counsel repeatedly represents that Kuriyan will not pursue those Counts in this action.  See Plaintiff/Relator Jacob Kuriyan's Consolidated Response to Defendants' Motions to Dismiss at 1 (Doc. 130)("As a preliminary matter, Relator does not intend to seek civil penalties or further damages against Defendants once his alternate remedy dispute with the United States and State of New Mexico [] has been resolved."); Plaintiff/Relator Jacob Kuriyan's Response to Defendants' Motion to Dismiss Relator's 3rd Amended Complaint at 1 (Doc. 145); Joint Status Report and Provisional Discovery Plan at 4 (Doc. 181)("Once Relator's pending alternate remedy motion has been fully resolved (including any appeals related to it), this case will essentially have concluded. Relator will not litigate further damages against Defendants."); Agreed Order Staying Discovery at 1 (Doc. 194).  Whatever new counsel now thinks of the evidence, those prior representations control the course of this litigation at the time the United States and the State of New Mexico file dispositive motions.  The Court honors those representations.  It resolves the alternate-remedy dispute and enters Final Judgment so that Kuriyan can pursue an appeal if he

chooses.  See MOO at 64.  That sequence does not supply a basis for relief under rule 59 or rule 60.

Finally, if Kuriyan believes a document establishes liability under Counts I, II, or III, he remains free to file a new complaint.  The Court dismisses those Counts without prejudice because Kuriyan chooses not to pursue them during this litigation.  If Kuriyan now believes he has a "smoking gun," he may fire it -- but not to reopen this case.  The Court therefore denies the Motion to Amend insofar as it relies on his document production argument.

## II.    THE COURT WILL NOT AMEND THE FINAL JUDGMENT AS TO COUNT IV.

Kuriyan's final argument is that the Court should amend its Final Judgment dismissing Count IV, because the Court should exercise its discretion under N.M. Stat. § 44-9-9(D) to preserve Kuriyan's NMFATA claim.  See Motion to Amend at 13.  He contends that the Court fails to weigh the parties' best interest and the public purposes behind the Fraud Against Taxpayers Act when deciding to dismiss Count IV.  See Motion to Amend at 14.  Kuriyan misinterprets N.M. Stat. § 44-9-9(D).

To obtain relief, Kuriyan must satisfy either rule 59 or rule 60.  Under rule 59, he must show: (i) an intervening change in controlling law; (ii) previously unavailable evidence; or (iii) the need to correct clear error or prevent manifest injustice.  See Servants of the Paraclete v. Does, 204 F.3d at 1012. Rule 60(b), in turn, permits relief for "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, or other limited circumstances.  Fed. R. Civ. P. 60(b).  Although Kuriyan does not invoke either rule expressly, his argument fits only within rule 59's clear-error prong and rule 60's "mistake" provision, because he identifies no intervening change in law, no newly discovered evidence, and no fraud or other extraordinary circumstance.

Importantly, the Tenth Circuit holds that motions to reconsider are "not available to allow

a party to merely reargue an issue previously addressed by the court . . . ."  Cashner v. Freedom Stores, Inc., 98 F.3d 572, 576 (10th Cir. 1996).  In the Relator's Objection to Magistrate Judge's Indefinite Postponement of Summary Judgment Briefing, filed January 9, 2024 (Doc. 439), Kuriyan makes this same argument that N.M. Stat. § 44-9-5(A)'s "best interest" standard should apply to  § 44-9-9(D).  Relator's Objection to Magistrate Judge's Indefinite Postponement of Summary Judgment Briefing at 1.  In the MOO, the Court rejects this argument.  See MOO at 63.  For this reason alone, amendment under rule 59 and rule 60 is improper.

Nevertheless, looking at Kuriyan's statutory argument, he misinterprets § 44-9-9(D).  N.M. Stat. § 44-9-9(D) states: "[A] court may, in its discretion, dismiss an action brought pursuant to Section 44-9-5 NMSA 1978 if the elements of the alleged false or fraudulent claim have been publicly disclosed in the news media or in a publicly disseminated governmental report at the time the complaint is filed."  N.M. Stat. § 44-9-9(D).  Kuriyan asserts that this State statute means that the Court must apply the best-interest standard under N.M. Stat. § 44-9-5(A): "[T]aking into account the best interest of the parties involved and the public purposes behind the Fraud Against Taxpayers Act."  Motion to Amend at 13 (quoting N.M. Stat. § 44-9-5(A)).  This argument is not sound, because § 44-9-9(D) makes no reference to § 44-9-5(A)'s best interest standard.  Rather, the Court reads § 44-9-9(D) as giving it discretion to determine whether the elements of the alleged false or fraudulent claim have been disclosed publicly, and if the elements have been disclosed, to dismiss the Complaint.  The Court determines in its MOO that the LFC Report is publicly disclosed and therefore dismisses the claim.  See MOO at 63.  The Court therefore denies Kuriyan's Motion to Amend the Final Judgment as to Count IV.

**IT IS ORDERED** that: (i) Plaintiff/Relator Jacob Kuriyan's Motion to Alter or Amend the Judgment, and for Relief from a Judgment and Order, filed September 10, 2024 (Doc. 457), is denied; (ii) the Court denies Kuriyan's request to amend the Final Judgment as to Counts I, II, and

III; and (iii) the Court denies Kuriyan's request to amend the Final Judgment as to Count IV.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alan Grayson
Alan Grayson, Esq.
Indialantic, Florida

     *Attorneys for the Plaintiff/Relator*

David W. Tyler
Carol Wallack
Civil Division
United States Department of Justice
Washington, D.C.

-- and --

Ryan Ellison
  First Assistant United States Attorney
Ruth Fuess Keegan
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for Interested Party United States of America*

Raúl Torrez
  Attorney General
Zachary Asher Shandler
  Assistant Attorney General
New Mexico Department of Justice
Santa Fe, New Mexico

     *Attorneys for Interested Party State of New Mexico*

Michael R. Hoernlein
Alston & Bird LLP
Charlotte, North Carolina

-- and --

Robert E. Hanson
Matthew E. Jackson
Peifer, Hanson, Mullins, & Baker P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant UnitedHealthcare of New Mexico, Inc.*

Tina M. Gooch
Sutin, Thayer & Browne
Albuquerque, New Mexico

-- and --

Jarrad Lucian Wood
Reed Smith LLP
Los Angeles, California

-- and --

Steven Hamilton
Jason T. Mayer
Reed Smith LLP
Chicago, Illinois

     *Attorneys for Defendant HCSC Insurance Services Co.*

Julia L. Allen
Steven Ragland
Keker, Van Nest & Peters LLP
San Francisco, California

-- and --

Gregory Marshall
Jeanne Y. Sohn
Snell & Wilmer LLP
Albuquerque, New Mexico

     *Attorneys for Defendant Molina Healthcare of New Mexico, Inc.*

Winston Y. Chan
Charles J. Stevens
Gibson, Dunn & Crutcher LLP
San Francisco, California

-- and --

Charles K. Purcell
Rodey, Dickason, Sloan, Akin & Robb, P.A
Albuquerque, New Mexico

*Attorneys for Defendant Presbyterian Health Plan, Inc.*